IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANG B. PARK,
               Plaintiff,

vs.

MARCELO AHN; THE WALLACE,
               Defendants.

Civil Action No. 15-678
Chief Magistrate Judge Maureen P. Kelly

Re: ECF No. 47

## OPINION

**Kelly, Chief Magistrate Judge**

Presently before the Court is a Motion for Summary Judgment filed by Defendants Marcelo Ahn and The Wallace (collectively, "Defendants"), ECF No. 47. For the reasons that follow, Defendants' Motion for Summary Judgment is denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In this civil action, Sang B. Park ("Plaintiff") brings a breach of contract claim against Marcelo Ahn ("Ahn") and The Wallace, a restaurant. The action arose from the parties' alleged agreement regarding Plaintiff's $300,000 payment to Ahn, relating to the opening of a restaurant. In particular, Plaintiff alleges in the Complaint that in 2008 and 2009, he made two payments to Ahn pursuant to an agreement that the money would be used to open and operate a restaurant in California. ECF No. 1 ¶¶ 7, 9-10. Plaintiff alleges that the parties agreed in 2010 that Ahn would begin repayment to Plaintiff. Id. ¶ 12. The money has not been repaid. Id. ¶ 21.

In support of the instant Motion for Summary Judgment, Defendants argue that the money was an investment in a corporate entity, Libra, Inc. ("Libra"),[1] and that the alleged agreement to convert the investment into a loan lacked consideration. ECF No. 48 at 1-2. They also argue that Ahn cannot be held liable personally liable for the alleged breach of contract because no grounds exist for piercing the corporate veil. Id.

Unless otherwise noted, the following facts are undisputed.[2] In late 2008, Plaintiff agreed to invest in a restaurant venture. ECF No. 49 ¶ 1; ECF No. 54 ¶ 1. Plaintiff wired $150,000 to the bank account of Libra, Inc., a California corporation of which Ahn was CEO, on November 15, 2008, and did so again on April 24, 2009. ECF No. 49 ¶¶ 3, 4, 10; ECF No. 54 ¶¶ 3, 4, 10. On or about February 23, 2009, prior to making the second $150,000 payment, Plaintiff was provided with an investment memorandum. ECF No. 49 ¶ 5; ECF No. 54 ¶ 5. The memorandum stated, *inter alia*, that each $100,000 investment represented a specified percentage of equity ownership in the company.

In 2010, Plaintiff advised Ahn that he no longer wished to be an investor in Libra and demanded the return of his investment. ECF No. 49 ¶ 15; ECF No. 54 ¶ 15. Plaintiff testified that Ahn said that he couldn't return the money, because a portion had been spent. ECF No. 50-1 at 8. "And I said, then you take this as a loan. He agreed ... from that point on, it wasn't investment for me." Id. When asked whether he agreed to give Ahn anything in exchange for recharacterizing the payments as a loan, Plaintiff replied, "No, not at all." Id. at 9.

---

[1] Defendants aver that Libra, Inc. was the predecessor to Libra Restaurant Group LLC, the current owner and operator of The Wallace. ECF No. 48 at 1. For purposes of convenience, the entities are referred to collectively as "Libra," unless otherwise specified.
[2] Pursuant to Local Rule 56, alleged material facts will be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

2

The parties have submitted several e-mail exchanges between them,[3] several of which are pertinent to the issues under review. Defendants submitted an e-mail dated June 2, 2010, in which Ahn stated as follows:

> I don't think it's fair that you want to change your position from investor to lender all of a sudden and want to give me a $300K loan I never asked for. Everyone I talked to says that's not fair regardless if you are my uncle or not.
>
> However, because we are related, the only thing I can promise you is that I can pay you $150k if the restaurant survives. That is if you want absolutely no involvement in this anymore like you said on the phone. It would take me a few years to do so. If the restaurant doesn't survive, I can't pay you back."

ECF No. 50-12 at 1.

An e-mail to Ahn from Plaintiff, dated August 5, 2010, stated, "As per our phone conversation on 8/5/2010 ... the $300,000 that I place into the restaurant will be a loan. I am hopeful that you in good faith will return the loan in full as soon as possible." ECF No. 53-2. Ahn replied to Plaintiff in an e-mail dated August 6, 2010, which stated: "Per our phone conversation, I will return your money either from the profits of the restaurant, including the profits from my shares, or ... get an additional investor or will try to sell shares ... to existing investors and will pay you back as soon as possible." Id.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Gray v. York Newspapers, Inc., 957 F.2d

---

[3] It appears that many of Plaintiff's electronic communications with Ahn were routed through Chong Park, Plaintiff's son.

3

1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991). When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. EEOC v. Allstate Ins., 778 F.3d 444, 448 (3d Cir. 2015).

In order to avoid summary judgment, a party must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial; "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the nonmoving party fails to make a sufficient showing on any essential element of its case, the moving party is entitled to judgment as a matter of law. Id.

## B. Defendants' Motion for Summary Judgment

In the Motion for Summary Judgment and accompanying Brief in Support, Defendants raise two dispositive legal questions. The first question is whether Ahn's alleged promise to treat Plaintiff's investment in a corporate entity as a personal loan is unenforceable for lack of consideration. ECF No. 48 at 3. The second question is whether Plaintiff has developed sufficient facts in discovery to pierce Libra's corporate veil and impose individual liability upon Ahn. Id. Plaintiff opposes the Motion for Summary Judgment, arguing the factual dispute regarding the characterization of the money given to Ahn presents a genuine issue of material fact. ECF No. 52 at 4. Plaintiff also argues that Ahn, as an agent of The Wallace, bound himself and The Wallace when he made guarantees to repay the loan to Plaintiff through The Wallace's profits. Id. at 9-10.

4

### 1. Consideration for Loan Agreement

First, Defendants argue that Plaintiff's investment in Libra cannot be transformed into a personal loan to Ahn because any agreement to do so was not supported by consideration. ECF No. 48 at 4-6. Defendants point to Plaintiff's testimony that he did not agree to give Ahn "anything in exchange for his agreement to re-characterize it as a loan." Id. at 4. Defendants also insist that Plaintiff incurred no detriment, and Ahn incurred no benefit, in exchange for the alleged promise to treat the money as a loan. As Defendants urge, "it must be accepted for purposes of summary judgment that [Ahn] agreed to convert Park's equity in Libra LLC to debt. Thus, the only relevant question is whether this alleged agreement was supported by new consideration." Id. at 6.

"Consideration sufficient to support the existence of a contract confers a benefit upon the promisor or a detriment upon the promisee; a 'bargained for exchange.'" Kelly v. Ickes, 629 A.2d 1002, 1007 n.3 (Pa. Super. Ct. 1993); see also Asmus v. Pacific Bell, 99 P. 2d 71, 93 (Cal. 2000). "The terms 'benefit' and 'detriment' are used in a technical sense, and 'have no necessary reference to material advantage or disadvantage to the parties.'" Stelmack v. Glen Alden Coal Co., 14 A. 2d 127, 128 (Pa. 1940).

Defendants have not attacked the alleged contract for lack of certainty or mutual intent, but this factually opaque record is markedly difficult to assess. It is undisputed that Plaintiff orally agreed to pay money towards a restaurant venture and that he made two payments to that effect. There is evidence that Plaintiff understood, at the time of both payments, that they constituted investments. The agreed-upon details of Plaintiff's investment, if any, are not of record. It is further undisputed that specific terms were proposed in the investment memorandum provided after Plaintiff's first payment, but that Plaintiff never signed the

5

memorandum before he sent a second infusion of funds. Plaintiff has submitted evidence that he did not agree to the terms of the memorandum. The parties dispute whether they later agreed that the payments would be considered a loan to Ahn; as with the investment, no particular loan terms – other than communications from Ahn, indicating his various plans and abilities regarding repayment – are of record.

As Defendants suggest, and Plaintiff does not disagree, we must assume for present purposes that the parties agreed to convert Plaintiff's "investment" into a "loan." Loans and investments connote distinctly different benefits and detriments to both payor and payee. See, e.g., O'Cheskey v. Herring Nat'l Bank, 520 B.R. 208, 219 (Bankr. N.D. Tex. 2014) (discussing distinctions).

Thus, an agreement to convert an investment into a loan intrinsically alters the existing benefits and detriments to the parties. From the parties' testimony and communications, it is apparent that they comprehended that "investment" and "loan" differed. Plaintiff's failure to state that he would give something in exchange for the recharacterization does not affect the fundamental reshaping inherent in a change in status from investor to creditor. It cannot be said, as a matter of law, that such a modification alone is insufficient consideration to support a contract. For example, in Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 371-79 (S.D.N.Y. 2001), which involved a rather complicated and lengthy series of financial transactions, the court considered payments that might have been intended as equity investments but were later made subject to promissory notes. Defendants sought summary judgment on grounds that the notes lacked consideration. Id. at 391. The court rejected their argument, finding that "to the extent that cash advances ... were originally intended as capital contributions in exchange for an equity share of certain business interests ..., the conversion of that putative equity into a debt would

6

constitute consideration for the Notes." Id. at 392. A similar conclusion is appropriate in this case, and Defendants' Motion should be denied to that extent. Viewing all facts and inferences in the light most favorable to Plaintiff, those facts and inferences do not support a conclusive finding that the parties' alleged 2010 agreement lacked consideration.

As a final matter, Defendants' reliance on California corporation law rather unnecessarily muddies the waters. Defendants argue, based on that law, that Plaintiff did not have a right to a distribution by virtue of his choosing to disassociate from Libra, and also risked forfeiture of his interest in the company as an offset to any damages for his breach. ECF No. 48 at 5. Assuming *arguendo* the accuracy and applicability thereof, these state legal precepts do not necessarily impact the summary judgment analysis. Indeed, Plaintiff's newly assumed risk of equity forfeiture, purportedly associated with the recharacterization of his investment, might be seen as a detriment and thus as consideration. Likewise, Defendants offer no authority to suggest that Plaintiff's inability to disassociate from Libra, or to receive a distribution after doing so, would preclude Ahn from making an enforceable promise to repay him. California law aside, a reasonable jury could conclude that Defendant agreed in 2010 to treat Plaintiff as a lender, rather than an investor. As discussed *supra*, summary judgment should be denied on these grounds.

### 2. Sufficiency of Evidence to Pierce Corporate Veil of Libra

Next, Defendants argue that Plaintiff cannot hold Ahn personally liable for breach of contract, because there are no grounds for piercing Libra's corporate veil. ECF No. 48 at 6-9. In response, Plaintiff argues, *inter alia*, that he does not seek to pierce the corporate veil, but seeks to hold Ahn to his promises to repay Plaintiff. ECF No. 52. Anticipating such an argument, Defendants counter that Ahn's promises, viewed in context, do not translate to a personal commitment to pay company debts. ECF No. 48 at 8. Both parties cite to correspondence

7

between the parties, arguing that the words therein support their respective positions. The resulting dispute constitutes a textbook question requiring a factfinder to resolve.

Acknowledging the gap-filled record and the disputed facts surrounding the parties' relationship and transactions, the Court finds that Defendants have not established that they are entitled to judgment as a matter of law. Accordingly, the Motion for Summary Judgment is denied.

## III. CONCLUSION

For the foregoing reasons, primarily the existence of genuine issues of material fact, Defendants' Motion for Summary Judgment, ECF No. 47, is denied. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 7th day of December, 2016, IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendants Marcelo Ahn and The Wallace, ECF No. 47, is DENIED.

BY THE COURT:

*[signature]*

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record via CM-ECF